HADLEY v. MORRIS et al.—249 S. W. (2d) 295.

Western Division at Jackson. November 29, 1951.

Petition for Certiorari denied by Supreme Court, March 7, 1952.

Holmes & Holmes, of Trenton, for plaintiff-in-error.

Robert P. Adams and L. L. Harrell, both of Trenton, for defendant-in-error.

SWEPSTON, J. J. A. Hadley, administrator of the estate of his minor son, Charles Robert Hadley, has appealed in error from an adverse verdict and judgment in his action against Charles Morris, senior, and W. H. Morris.

Bobby Hadley was struck by the automobile of W. H. Morris while the same was being operated on highway 45 W by Charles Morris, Sr., on June 18, 1948, and died two days later. Bobby was then 7 years of age.

The first two assignments of error are in substance that there is no evidence to support the verdict of the jury in favor of defendants.

The plaintiff insists that:

(1) the driver is guilty of negligence as a matter of law;

(2) there is no evidence of contributory negligence of the child;

(3) there is no evidence that the child was capable of contributory negligence.

Under these assignments we do not weigh the evidence. We are required to view the evidence and all reasonable inferences therefrom in a light most favorable to defendant and to discard all countervailing evidence and inferences.

There is evidence to show the following facts.

The Hadley home is on the west side of the two lane concrete Highway and sets back from the west edge of the concrete strip about 130 feet. The lawn in front of the residence slopes very gradually toward the road to

a point about 30 feet from the west edge of the concrete, called the ''bank'' in the testimony, then downward less gradually to a point 8 feet from the edge of the concrete. This bank is about 5 feet higher than the road, except at a large oak situated about in line east-west with the north end of the residence and just west of the top of the bank; here around the tree the bank is two feet higher.

To the south of this tree ten feet is a path leading from the north end of the residence east-south-east to the road. Almost directly across the road is the farm manager's residence, the McCall home, where lived the nine year old playmate of the deceased.

In the Hadley lawn are several large evergreen shrubs and to the north is another big tree, the Hadley driveway and other things that might in June interfere with the vision of one approaching from the north along the highway, but there is nothing closer to the highway than the big tree except a telephone pole and two mail boxes of usual size and adjacent to one another.

The accident occurred about midday. Bobby had been across the street playing with the McCall boy. He ran home telling McCall he was going to get his sling shot and would be right back. When he entered his home his mother told him lunch was ready, but he said he was not ready and left the house and ran fast from the north end of his home, down the path south of the big tree, down the back, and upon the highway, where he was struck by the left front of the automobile.

Mr. Morris is 57 years of age. He was driving not over 30 m.p.h., possibly 25. As he approached the scene two large type road graders were coming from the south or opposite direction. These graders were traveling 15 to 18 m.p.h., occupying all of their side of the concrete; the blade sets at an angle and can be extended several feet

beyond the outer edge of the wheels, but on this occasion the blade was not in use and protruded little, if any.

Mr. Morris was watching the nearer grader to make sure of clearance.

The driver of this grader testified as follows:

"Q. And you met the Morris car? A. Yes I did.

"Q. Where did you meet him? A. Right in front of where Mr. Hadley lives, about even with his house.

"Q. Where? A. About even with his house, right along the road about even with his house.

"Q. Mr. Hadley's house? A. Yes.

"Q. Now, did you see a little boy around there any where? A. Yes.

"Q. Where did you see him? A. Down near that oak tree, he was running down across the yard there toward the road.

"Q. Running down toward the road? A. Yes.

"Q. Where were you when that happened? A. He was about half way between where that oak tree was and the Hadley house.

"Q. You didn't see the accident? A. No.

"Q. You didn't see anything to attract your attention to that? A. No.

"Q. Had you already passed? A. No, I was down there about that oak tree, when the boy was coming running down there, and I went on down the road.

'Q. Where was the Morris car at that time? A. About even with the house right there.

"Q. Even with the house? A. Yes.

"Q. Even with you? A. Oh, no.

"Q. Hadn't got to you? A. He was 18 or 20 feet up above me.

"Q. What? A. He was 18 or 20 feet up above me.

"Q. Mr. Morris was driving the Morris car, and the Morris car was traveling slowly, wasn't it? A. Yes.

"Q. You estimated from 20 to 25 miles an hour?
A. Yes.

"Q. That was before the accident ever happened?
A. Yes.

"Q. He was on his proper side of the road? A.
Yes.

"Q. And meeting practically, right in 18 or 20 feet
of the road grader? A. Yes.

"Q. You saw the car approaching and took your
eyes off of everything else and watched the road to
safely pass? A. Yes."

The driver of the other grader was to the rear some
substantial distance not definitely shown. His view was
unobstructed but he did not see Bobby until he was fall-
ing off the front of the Morris car. At this time the first
grader was beyond the McCall residence which is on the
south side of the road and about even with the path in
the Hadley lawn. The Morris car stopped within a few
feet and a little to the south of the big tree. Of course,
this witness was some distance south of the scene and
could not have a view along an east-west line of the tree
or the path.

Mr. Morris testified that the boy was stepping on to the
concrete road when he first saw him and that he immedi-
ately applied his brakes and stopped; that the front of
his car had just passed the rear of the first grader. His
son Charles testified that Mr. Morris said he did not see
the child until he was about six feet in front of the car
and that he could not possibly have stopped without hit-
ting him.

There was no evidence of faulty brakes or other opera-
ting equipment about the car, nor of excessive speed.
The only question on this assignment is whether Mr.
Morris was as a matter of law guilty of negligence in not
seeing the child in time to avoid striking him.

In Harris v. Miller, 24 Tenn. App. 332, 144 S. W. (2d) 7, 9, a colt ran out of a lane towards and upon the road in front of Mrs. Miller's car. The distance from where the colt emerged from a hedge that obstructed the view of a person on the highway to the highway was 30 feet. Mrs. Miller testified that she did not see the colt until her car was 5 feet from the point of impact when her car struck the colt. It was held that the evidence did not preponderate against the finding of the trial judge (without a jury) that she was not guilty of negligence in not seeing the colt sooner. This necessarily means that she was not guilty of negligence as a matter of law. The Court said:

"It is the duty of the driver of an automobile to keep a diligent lookout ahead and to see all that comes within the radius of his line of vision, both in front and to the side. He is not required to turn his head at every private driveway as he passes upon a public thoroughfare, in anticipation that some person or loose horse will run out upon a city street. It is sufficient if the driver sees what falls within his side view of his lookout ahead".

We think it was for the jury to say whether Mr. Morris was negligent in paying such close attention to the road grader he was in the act of meeting and passing that his attention was momentarily distracted from the view straight ahead; how far away he was from the point of impact when he should have seen the boy; how far the boy was from the road when he should have been seen by the lateral vision of Morris; when he should have anticipated the boy was going to run upon the road, etc.

It is a matter of common observation that children play and run on and about an unfenced lawn abutting on a road or a street without necessarily getting on the road proper. A motorist must be on guard for such situations, but he is only required to exercise ordi-

nary care under the circumstances to discover the peril and to strive to avoid injuring a child or an animal which does run on to the road.

As to contributory negligence of the child, we understand the cases to hold that where a child is 6 years old or under, Wells v. McNutt, 136 Tenn. 274, 189 S. W. 365, and Taylor v. Robertson, 12 Tenn. App. 320, or where he is 7 to 14 years old, West v. Southern Ry. Co., 20 Tenn. App. 491, 100 S. W. (2d) 1004, there is a prima facie presumption he is not capable of negligence, but that the evidence may show him to be capable of negligence and if there be any material evidence of capacity, it is for the jury to decide; whereas if a child is over 14 years old there is a prima facie presumption that he is capable of negligence the same as a grown person, but if there be any material evidence he is incapable, it is a jury question. Same cases, supra.

In either situation the prima facie presumption may be nullified by evidence relating to his mental development, experience and other circumstances, or the lack of these elements as the case may be. Another element or factor emphasized in Wells v. McNutt, supra, is the child's familiarity, or lack of same, with the scene of his injury by reason of living nearby, or for any other reason, we may add.

We think there is evidence that this child was capable of appreciation of the danger in crossing this highway.

His parents had warned him not to cross it, but actually he had crossed it repeatedly to play with the McCall boy; the two played in first one's yard and then the other's; each had a bicycle and had used them on the highway, although cautioned against it; Bobby had had a pony for a year and had ridden it on or alongside the highway; he had been around grown people with his father; he lived

at the scene and saw the daily traffic; he lived on a farm in the country; and he had the association with older children in his family.

There was ample evidence that he was negligent on this tragic occasion, for he ran rapidly without apparently paying any attention to the first road grader just passing, or to the car of defendant which was approaching or to the second grader coming from the opposite direction.

Counsel refers to the "humanitarian doctrine" in Tennessee, or otherwise called "discovered Peril", or "last clear chance" and quotes a statement from Stinson v. Aluminum Co., Cir., 141 F. (2d) 682.

We think it has no application here, because the proof is that Morris did not see the child until he was about 6 feet in front of him.

In Todd v. Railroad, 135 Tenn. 92, 105, 185 S. W. 62, 65, L. R. A. 1916E, 555, after pointing out the conflict of decisions among the various jurisdictions as to whether the defendant must have actual knowledge of the peril of plaintiff, or whether he should be responsible for what he should have discovered by the exercise of ordinary care, the Court then adopts as the proper rule generally that defendant must have actual knowledge, of the peril, but there are exceptions such as persons engaged in business hazardous to the public in certain aspects, such as railroads, electric power companies, etc., operating dangerous instrumentalities.

The Court said:

"Where the acts of misconduct or negligence on the part of plaintiff and defendant are not successive, but simultaneous, in such case, or the act of the plaintiff may not be conceived of as terminated as a causal factor, there should be no recovery".

The court then says, however, that public policy may require that in certain instances as above mentioned this rule be not applied, because it is better to require in those instances continuous anticipation that someone may subject himself to peril from defendant as a source; in these situations actual knowledge is not required. As illustrative see Hemmer v. Tenn. Elec. Power Co., 24 Tenn. App. 42, 139 S. W. (2d) 698; International Harvester Co. v. Sartain, 32 Tenn. App. 425, 222 S. W. (2d) 854 and many railroad cases.

These assignments must be overruled.

■ The third assignment is that it was error for the court to charge a violation of the statute Code, Section 2682 with regard to brakes, when no such allegation was made.

Under this is cited Chesapeake & N. Railroad v. Crews, 118 Tenn. 52, 99 S. W. 368, alleged to hold it error to charge a violation of a statute in connection with a common-law declaration.

We find no merit in this.

The declaration charged in count one that defendant negligently ran into the child and count two that defendant failed to keep a lookout ahead, failed to stop without striking the child. The court charged Section 2682(a) and (c) 1, the latter of which reads:

"Driving a vehicle when not under complete control, or with inadequate or improperly adjusted brakes".

The courts then charged it is negligence to violate those statutes; there was no other mention of brakes. This was consistent with counsel's opening statement to the jury.

Moreover, it was not error to charge the statute, because those parts of it are simply an enactment of common-law rules.

 It is only where the statute and the common law are inconsistent that it is error to charge the statute on a common-law count. This is held in the Crews case and many others. American Trust & Banking Co. v. Fairbanks, 5 Tenn. App. 296; Kemp v. Caruthers, 11 Tenn. App. 201, 210. Assignment overruled. Also, there is no showing that any prejudice resulted. Tennessee Cent. Ry. C. v. Umenstetter, 155 Tenn. 235, 291 S. W. 452, referring to chapter 32, Acts of 1911.

Assignment overruled.

 The fourth assignment sets out a part of the charge relating to the capability of the child for negligence. The court charged not only as quoted but fully and in addition to same. We find the charge to be correct according to the authorities we have referred to under the first two assignments.

This assignment is overruled.

 The fifth assignment complains of the refusal of special request #4 of plaintiff as follows:

"It is the duty of the driver of an automobile to keep a diligent lookout ahead and to see all that comes within the radius of his line of vision, both in front and to the side".

This is but an incomplete statement of what we have quoted, supra, from Harris v. Miller and we think it was not error to refuse the request; also the court did charge plaintiff's request #3:

"It is the duty of the driver of an automobile to keep his machine always under control, so as to avoid collisions with persons using the highway. He cannot assume that the road is clear, and must, at all times be diligent and anticipate and expect the presence of others".

The court charged also plaintiff's request #5 as to the duty of a driver towards small children and defendant's request as to watching for obstructions.

Assignment overruled.

Assignment six complains of the granting of defendant's special request as follows:

"* * * That the proximate cause of an injury is a cause from which a man of ordinary experience and sagacity could foresee that the result might probably ensue and is one where the effect was absolutely necessary and proximate cause must be active, operating and carrying and contained within the possibility and potentiality for harm".

This in as attempt by defendant's counsel to abstract the statement of Judge Darr in Jaggers v. Southeastern Greyhound Lines, D. C., 34 F. Supp. 667, at page 669, where the court was distinguishing between proximate and remote cause.

We doubt that the first part of the above quoted charge is strictly in accord with the statement of Judge Felts in Spivey v. St. Thomas Hospital, 31 Tenn. App. 12, 25 et seq., 211 S. W. (2d) 450, 455, wherein a learned and full discussion of the question of foreseeableness is dealt with.

"The majority of the well-considered cases, we think, apply foreseeableness only as a test of negligence; whether defendant's conduct created an unreasonable risk of harm to plaintiff. If it did, such cases hold defendant liable for all the injuries within the reasonable range of such risk, whether they could have been foreseen or not". (Citing authorities.)

In view of the fact this case must be retried, as will later appear, we think it better to give the charge in the language established in the cases of Deming v. Merchants'

Cotton-Press & Storage Co., 90 Tenn. 306, 17 S. W. 89, 13 L. R. A. 518, and Grigsby & Co. v. Bratton, 128 Tenn. 597, 163 S. W. 804, as quoted from in Tri-State Transit Co. of La., Inc. v. Duffey, 27 Tenn. App. 731, 746, 173 S. W. (2d) 706, and other cases.

The latter part of the charge as given is not as clear as could be desired.

We find no merit in assignment seven and the same is overruled.

■ Assignment eight complains of the giving of defendant's special request as follows:

"I further charge you that any person intending or attempting to cross a highway is required to see that such crossing may be made in safety before going onto the same, and a failure to do so is negligence. Such person is required to look for approaching traffic before going on to the highway".

This instruction contains a positive error of law. As clearly stated in De Rossett v. Malone, 34 Tenn. App. 451, 239 S. W. (2d) 366, 373, the absolute duty to stop, look and listen required of a traveler about to cross a railroad at a grade crossing does not apply to a pedestrian using or about to use or to cross a street or highway, unless a statute or ordinance so requires; such pedestrian is only bound to exercise ordinary care for his own safety, as fully explained in the opinion and need not be here repeated.

The effect of the instruction is to make the deceased child guilty of negligence for failure to stop, look and listen, regardless of the circumstances.

We must, therefore, reverse and remand for a new trial. Finton v. Mercury Motors, Tenn. App., 194 S. W. (2d) 354.

Defendant-in-error will pay costs of appeal.

Anderson, P. J., and Tipton, Special Judge, concur.