# NASH-WILSON FUNERAL HOME, INC. and HAZEL B. COUCH v. LOUISE GREER and RALPH E.GREER. —417 S.W.(2d) 562.

Eastern Section. October 10, 1966.

Certiorari Denied by Supreme Court January 3, 1967.

Rehearing Denied by Supreme Court on February 6, 1967.

194

Henry R. Price and Eastman Portrum, Rogersville, and Alfred Taylor, Johnson City, for plaintiff-in-error, Nash-Wilson Funeral Home, Inc.

Hale & Phillips, Rogersville, for plaintiff-in-error, Hazel B. Couch.

Tom H. Rogan, Rogersville, for defendants-in-error, Louise Greer and Ralph E. Greer.

COOPER, J.  These suits arose out of an ambulance-automobile collision which occurred on October 11, 1965, in, the intersection of Center Street and Lamont Street in Kingsport, Tennessee. The plaintiffs, Louise Greer and her husband Ralph E. Greer, were passengers in the ambulance of the defendant, Nash-Wilson Funeral Home. The automobile involved in the accident was owned and operated by the defendant Hazel B. Couch.

Mrs. Greer filed suit in the Circuit Court of Hawkins County, Tennessee, in an effort to recover damages for personal injuries she received in the accident. Her husband, who was not injured in the accident, filed suit to recover damages for the loss of his wife's services and consortium, and to recover expenses incurred in treating her injuries.

The cases were consolidated for trial, at the conclusion of which the jury returned verdicts for both plaintiffs and against both defendants—Louise Greer being awarded $15,000 and Ralph Greer being awarded $2,500.00.

On appeal, each defendant insists that there is no evidence to sustain the jury's verdict against them.

██ In reviewing a case on appeal, where the appeal is from a judgment based on a jury's verdict, "it [our review] must be governed by the rule, safeguarding the constitutional right of trial by jury, which requires us to take the strongest legitimate view of all the evidence to uphold the verdict, to assume the truth of all that tends to support it, to discard all to the contrary, and to allow all reasonable inferences to sustain the verdict." D. M. Rose & Co. v. Snyder, 185 Tenn. 499, 206 S.W.2d 897. And

if there is material evidence to support the verdict it must be affirmed. City of Chattanooga v. Ballew, 49 Tenn. App. 310, 354 S.W.2d 806.

When so reviewed, the record shows that Mrs. Greer, acting on the advice of her husband's physician, called for an ambulance of the defendant Nash-Wilson Funeral Home to take her husband to the Veterans Hospital in Johnson City, some sixty miles from their home in Rogersville. The ambulance was driven by one Andrew Peavler. On reaching Kingsport, Tennessee, and while travelling east on Center Street, Peavler ran a red light at the intersection of Center and Lamont Streets. The defendant Hazel B. Couch was crossing Center at Lamont, going south, she having a green light at the time. The vehicles collided underneath the signal light near the center of the intersection.

The several witnesses who saw the accident gave varying estimates as to the speed of the ambulance as it approached the intersection where the accident occurred —the estimates of speed ranging from 20-25 miles per hour to 40-45 miles per hour. All witnesses agreed that the red flashing light on the ambulance was working, and the majority testified that the ambulance siren was sounding. One witness testified, however, that the siren did not sound during the last 150 feet before the ambulance entered the intersection.

Mr. Peavler testified that he saw the automobile driven by Miss Couch in time to have stopped the ambulance but did not do so, thinking that she would stop or alter her speed to let the ambulance pass.

Other witnesses testified that it was apparent that a collision would occur if both the ambulance and the auto-

mobile of Miss Couch continued into the intersection at the same rate of speed.

Miss Couch testified that she knew that she had the green light and did not look either to her left or to her right as she entered the intersection. She further testified that she did not hear the ambulance approach, and did not see it until her automobile struck the side of the ambulance.

The record further shows that the Nash-Wilson ambulance had not been designated or authorized as an emergency vehicle ''by the commissioner or the chief of police of an incorporated city.'' T.C.A. sec. 59-801. Not being so designated or authorized, the driver of the ambulance was not entitled to the privileges and exemptions from the requirements of designated traffic regulations (T.C.A. sec. 59-808, T.C.A. sec. 59-832), but was required to obey all statutes controlling the operation of motor vehicles generally, as well as exercise due care in the operation of his vehicle, and the trial court should have so instructed the jury.

Under the undisputed proof, the statutory right-of-way in the intersection of Lamont and Center Streets belonged to Miss Couch, she having entered a controlled intersection of the green light. T.C.A. sec. 59-810.

However, the fact that Miss Couch had the right of way does not, of necessity, require or justify a verdict be directed in her behalf. In our opinion, the question of who had the right of way is not the sole determinative issue in the present case, though it is a very important factor in a finding of liability in any intersection accident. The mere fact that one vehicle has the right of way over another at a street intersection does

not relieve the driver thus favored from the duty of exercising due care not to injure others at the street intersection. See Duling v. Burnett, 22 Tenn.App. 522, 534, 124 S.W.2d 294; Shew v. Bailey, 37 Tenn.App. 40, 260 S.W.2d 362. And, in our opinion, when the above evidence is considered in the light most favorable to the plaintiff as we are required to do, there is material evidence in the record from which twelve reasonable men—*acting under proper instructions from the court*—could find that both drivers failed to "exercise due care", regardless of who had the right of way, and that the negligence of both drivers combined and concurred together to proximately cause the accident.

Specifically, we think a jury reasonably could find that the driver of the ambulance entered a busy downtown intersection against a red light at an excessive rate of speed and without sounding its siren. Further, we think the jury could find that the ambulance driver did not have the ambulance under reasonable control and failed to act as a reasonably prudent person would act after he saw Miss Couch's automobile and realized that an accident was imminent if either he or Miss Couch did not alter the speed or change the course of their vehicle. The negligence of Miss Couch would be her failure to see the approaching ambulance until after the collision—it being a basic requirement of due care in the operation of an automobile that the driver keep a reasonably careful lookout for traffic upon the highway "commensurate with the dangerous character of the vehicle and the nature of the locality" (Hale v. Rayburn, 37 Tenn.App. 413, 264 S.W.2d 230), "and to see all that comes within the radius of his line of vision, both in front and to the side." Hadley v. Morris, 35 Tenn.App. 534, 249 S.W.2d 295, 298.

In assignment II, Miss Couch insists that the trial court erred in overruling her several motions to strike from plaintiff's declaration and to withdraw from the jury's consideration those statutes granting the operator of an authorized emergency vehicle exemptions from the requirements of designated traffic statutes. Specifically, Miss Couch sought to withdraw from the jury's consideration (1) T.C.A. sec. 59-808(a), (b), 2, 3, and (c) which in substance, permit the driver of an authorized emergency vehicle to proceed past a red or stop signal or stop sign after slowing to a speed necessary for safe operation of his vehicle, and to exceed the speed limit so long as he does not endanger life or property—provided the driver is making use of audible and visual signals (siren and flashing light) that meet the requirements of the applicable laws of the state; and (2) T.C.A. sec. 59-832 which grants the right-of-way to the authorized emergency vehicle and imposes the duty upon all other drivers to stop their vehicle as close to the right-hand edge of the street as possible and clear of any intersection.

As we have heretofore pointed out, under the proof in this case the Nash-Wilson ambulance had not been designated or authorized as an emergency vehicle "by the commissioner or the chief of police of an incorporated city" (T.C.A. sec. 59-801), and, as a consequence, the driver of the ambulance was not entitled to the privileges and exemptions from the requirements of designated traffic statutes granted to the operator of an *authorized* emergency vehicle, but was required to obey all statutes controlling the operation of motor vehicles.

In our opinion the trial judge, in ignoring the statutory definition of an authorized emergency vehicle and in instructing the jury to the effect that the driver

of the Nash-Wilson ambulance was entitled to the exemptions from the statutory requirements governing the operation of motor vehicles if they found that the ambulance was on an emergency run and was making use of both its visual and audible signals at the time of the accident, committed error.

The third assignment of Miss Couch is directed to the Judge's charge that:

"The right-of-way between vehicles at intersections where traffic is controlled by traffic signals must be determined by the special rules contained in the act providing for the control of traffic at such intersections.

"Ordinarily vehicles facing the green light have the right-of-way.

"Gentlemen, under the law—Under Title 59-828(b) of the Tennessee Code provides as follows:

" 'When two (2) vehicles enter an intersection from different highways at approximately the same time, the driver of the vehicle on the left shall yield the right-of-way to the vehicle on the right.' "

"The Court instructs you that within the meaning of this statute vehicles approaching an intersection at approximately the same time when it would appear to a person of ordinary prudence in the position of the driver of the vehicle approaching from the left of the other vehicle that if the 2 continued on their respective courses at the same rate of speed a collision would be likely to occur."

"The question does not necessarily depend upon which vehicle enters the intersection first but primarily upon

the probability of a collision when the relative distances and speeds of the 2 vehicles are considered.

"If when so considered there appears a likelihood of a collision unless one or the other alters its speed or course then they are regarded as approaching the intersection at approximately the same time, notwithstanding that the vehicle approaching from the left arrived at the intersection first.

"It is the duty of the driver approaching from the left to determine whether he can safely cross the intersection—intersecting street and this duty does not end with his entry of the intersection but continues so long as there is danger of a collision."

The charge as given is applicable only to uncontrolled intersections, and to give it where, as in the present case, the undisputed evidence shows that the intersection was controlled by an overhead traffic signal is error. See Spence v. Carne, 40 Tenn.App. 580, 292 S.W.2d 438.

As pointed out above, a very important factor in a finding of liability in any intersection accident is "which vehicle had the right of way." The effect of the court's charge was to take the right-of-way from Miss Couch, who entered the intersection on a green light, and to give it to the ambulance driver, it being undisputed that the ambulance was on the right and that the vehicles entered the intersection at approximately the same time.

While conceding that the charge of the court was erroneous, counsel for the plaintiff strenuously argues that the error was not prejudicial as the verdict was general and there was "ample evidence to support the jury's finding that Hazel B. Couch was guilty of negli-

gence other than the violation of the uncontrolled right-of-way statute.''

Being cognizant of the directive contained in T.C.A. sec. 27-117 that no judgment shall be set aside and a new trial granted on the ground of error in the charge of the judge to the jury unless it affirmatively appears that the error complained of has affected the results of the trial, we have re-read the evidence in this cause and the entire charge of the court. As the result, we have concluded that the above erroneous charge, especially when coupled with the erroneous assumption of the trial judge that the Nash-Wilson ambulance was an authorized emergency vehicle and the instruction to the jury to the effect that the driver of the Nash-Wilson ambulance was entitled to exemptions from the statutory requirements governing the usual operation of a motor vehicle if they found that the ambulance was on an emergency run and was making use of both its visual and audible signals at the time of the accident, affirmatively affected the verdict against Miss Couch and that she is entitled to a new trial where the issues are submitted to the jury under proper instructions.

In the remaining assignment of error, which is still pertinent as the judgment against Nash-Wilson, Inc. remains valid and in force though the judgment against Hazel Couch is set aside and a new trial is granted (see generally Lee v. Melson, 54 Tenn.App. 53, 387 S.W.2d 838), it is insisted that the verdicts are excessive.

''In approaching this question we must bear in mind that the amount of compensation due in personal injury cases cannot be determined with mathematical precision. The amount is primarily for the jury to determine and, it is said, next to the jury the most competent

person to pass upon the amount representing fair compensation is the judge who presided at the trial and heard the evidence. * * * The sphere within which the court on appeal may interfere is in cases where the trial judge has failed to keep the jury within reasonable bounds, his concurrence with the jury being entitled to much weight, City of Nashville v. Brown, 25 Tenn.App. 340, 350, 157 S.W.2d 612." Carman v. Huff, 32 Tenn.App. 687, 227 S.W.2d 780, 786. See also Johnson Freight Lines, Inc. v. Tallent, 53 Tenn.App. 464, 384 S.W.2d 46.

To determine if the verdict is within reasonable bounds, it is necessary and proper for this Court to take into consideration "the nature and extent of the injuries, the suffering, expenses, diminution of earning capacity, inflation and high cost of living, age, expectancy of life and amount awarded in other similar cases." Monday v. Millsaps, 37 Tenn.App. 371, 264 S.W.2d 6, and numerous cases there cited. And in doing so, we must follow the general rule, safeguarding the constitutional right of trial by jury, which requires us to take the strongest legitimate view of all evidence tending to uphold the verdict. See D. M. Rose & Co. v. Snyder, 185 Tenn. 499, 206 S.W.2d 897.

In the present case, the record reveals that the impact between the vehicles was such that Louise Greer was thrown out of her seat in the rear of the ambulance and into the partition between the driver and the body of the ambulance. As the result, she was knocked unconscious, suffered a cut on her right leg, and bruises and contusions over her body. Mrs. Greer was hospitalized after the accident for a period of 11 days complaining primarily of pain in the back and neck and with headaches.

Dr. W. E. Gibbons, the treating physician, expressed the opinion that the injuries Mrs. Greer received in the accident aggravated her preexisting chronic rheumatoid arthritic condition, and that since the accident Mrs. Greer "has had much more pain, and swelling and limitation of motion," and that in his opinion Mrs. Greer "is still suffering from the worsening of it. I couldn't say to what degree, but I'm sure she is worse, she's having almost constant pain or discomfort to some degree." Dr. Gibbons could not say how long the additional discomfort, pain and additional suffering would continue.

Mrs. Greer testified at the trial, which was some 5 months after the accident, that her back was still bothering her "an awful lot and also my neck." Mrs. Greer was then 43 years of age.

The parties stipulated that Mr. Greer incurred expenses of $483.95 in providing his wife with necessary medical treatment.

Mr. Greer testified that prior to the accident, his wife was able to perform the duties of a housewife without noticeable difficulty, but that since the accident, she has been unable to perform her usual household tasks and that he has had to help her.

On reviewing the above evidence of injuries, loss of services and expenses in the light of the authorities set above, we have concluded that we cannot say that either of the verdicts of the jury is patently excessive.

For the reasons set out above, the judgments awarded plaintiffs against the defendant Hazel B. Couch are reversed and the causes are remanded for a new trial. The judgments awarded plaintiffs against the defendant,

Nash-Wilson Funeral Home, Inc. are affirmed. Cost of the appeals are adjudged one-half against the plaintiffs, and one-half against the defendant Nash-Wilson Funeral Home, Inc.

McAmis, P. J., and Parrott, J., concur.