IN THE COURT OF APPEALS OF TENNESSEE
AT NASHVILLE
November 16, 2020 Session

**JAMES JUSTICE v. ELIZABETH HYATT**

**Appeal from the Circuit Court for Giles County**
**No. 16-CV-11690     David L. Allen, Judge**

_____

**No. M2019-02105-COA-R3-CV**

_____

Two cars collided at a four-way stop.  One driver filed a personal injury action against the other.  At trial, the two sides presented conflicting descriptions of the accident.  The jury found the defendant driver was not at fault.  And the trial court, as thirteenth juror, approved the jury verdict.  Because the jury verdict is supported by material evidence, we affirm.

**Tenn. R. App. P. 3 Appeal as of Right; Judgment of the Circuit Court Affirmed**

W. NEAL MCBRAYER, J., delivered the opinion of the court, in which FRANK G. CLEMENT, JR., P.J., M.S., and ANDY D. BENNETT, J., joined.

Drew Justice, Murfreesboro, Tennessee, for the appellant, James Justice.

Nathan E. Shelby and Jordan K. Gibson, Nashville, Tennessee, and Jeffrey Kohl, Oklahoma City, Oklahoma, for the appellees, Elizabeth Hyatt and Mid-Century Insurance Company.

**OPINION**

**I.**

James Justice and Paul Bradley spent the day of the accident looking at real estate investment opportunities around Giles County.  The two men had been friends for over 20 years.  As they were passing through Pulaski, Tennessee, they came to a four-way stop.  Mr. Justice was driving his pickup truck that day with Mr. Bradley in the passenger seat.  According to the two men, Mr. Justice stopped at the intersection and looked both ways.  Seeing no other vehicles, he then proceeded forward.  When he was about halfway through

the intersection, he spotted an approaching car to his right. Mr. Justice claimed that the car, a white SUV, "slowed down and then . . . sped up and crashed into us."

According to Mr. Justice, "[w]e spun around on impact." Meanwhile, the SUV continued traveling forward for another 40 or 50 feet before also stopping. He also presented diagrams depicting the point of impact and the final resting position of both vehicles.

His passenger, Mr. Bradley, echoed Mr. Justice's description of the accident. Mr. Bradley confirmed that the truck was already in the intersection when a large SUV appeared to his right. And the SUV "just rolled through" the stop sign and "seemed to accelerate." As he recalled, "I was looking right at the grille." Mr. Bradley claimed that the front of Ms. Hyatt's vehicle collided with the passenger side of Mr. Justice's truck.

Immediately after the accident, Mr. Justice checked on the other driver. He claimed that the driver, Elizabeth Hyatt, freely admitted liability for the accident. She told him, "it was my fault, I'm sorry, I was looking at that house that's painted two colors. I didn't see you. It was my fault." And she repeated this statement several times. Again, Mr. Bradley corroborated his story.

Later, Mr. Justice filed this personal injury action against Ms. Hyatt. He maintained that Ms. Hyatt's negligence—specifically, her failure to stop and look before entering the intersection—caused the accident. In his view, there was nothing he could have done to avoid the collision.

Ms. Hyatt's recollection diverged from Mr. Justice's narrative on several key points. A long-time resident in the area, Ms. Hyatt was intimately familiar with this intersection. And she distinctly remembered coming to a full stop at the four-way stop. She looked both ways and "did not see any traffic anywhere." She remembered noticing a nearby house when she stopped, but denied being distracted when driving.[1] Still, she never saw Mr. Justice's vehicle before impact.

As Ms. Hyatt described it, "the whole thing happened very quickly." She heard a noise and her car died. When Mr. Justice came to check on her, she was trapped in the car. The door was jammed. And she assured the jury that her apology was never intended as an admission of fault. She said she was sorry "because that's just the type of person I am."

Both sides submitted pictures of the damage to their vehicles. Each driver claimed the location of the damage supported his or her description of the accident. According to

---

[1] The police officer who investigated the accident testified by deposition. He had no independent memory of the accident or talking with the drivers. But he agreed that his incident report noted that Ms. Hyatt was distracted. Ms. Hyatt categorically denied ever speaking to the officer that day.

Ms. Hyatt, her car's damage was on the left front side while Mr. Justice's truck sustained damage primarily to the front. Mr. Justice disagreed with her assessment, pointing out the damage to his truck's right-front-quarter panel.

After hearing the testimony and viewing the exhibits, the jury found that Ms. Hyatt was not at fault. So the trial court issued a defense judgment. Mr. Justice moved for a new trial, arguing, in part, that the jury's verdict was against the weight of the evidence. The trial court independently reviewed the evidence and, as thirteenth juror, approved the verdict.

## II.

The sole issue on appeal is whether there is material evidence to support the jury verdict. *See* Tenn. R. App. P. 13(d). In a material evidence review, we do not reweigh the evidence or re-evaluate witness credibility. *Grissom v. Metro. Gov't of Nashville, Davidson Cty.*, 817 S.W.2d 679, 684 (Tenn. Ct. App. 1991). That is the jury's province. *Ferguson v. Middle Tenn. State Univ.*, 451 S.W.3d 375, 383-84 (Tenn. 2014). Our task is to ascertain whether the record contains any material evidence to support the jury's finding. *Kelley v. Johns*, 96 S.W.3d 189, 194 (Tenn. Ct. App. 2002).

Whether evidence is material has nothing to do with its weight. *Id.* "Material evidence" is evidence "which must necessarily enter into the consideration of the controversy and by itself, or in connection with the other evidence, be determinative of the case." *Meals ex rel. Meals v. Ford Motor Co.*, 417 S.W.3d 414, 422 (Tenn. 2013) (quoting *Knoxville Traction Co. v. Brown*, 89 S.W. 319, 321 (Tenn. 1905)). We take the strongest legitimate view of the evidence supporting the verdict, including all reasonable inferences, assume the truth of the supporting evidence, and discard all countervailing evidence. *Crabtree Masonry Co. v. C & R Constr., Inc.*, 575 S.W.2d 4, 5 (Tenn. 1978). If there is any material evidence to support the verdict, we must affirm. *Id.*

The evidence of fault at trial was conflicting. Both drivers maintained that they followed the rules of the road that day. *See* Tenn. Code Ann. §§ 55-8-128 (2020) (right of way at intersections), 55-8-130 (2020) (right of way at the entrance of a through highway), 55-8-149 (2020) (stop signs). And they exercised due care. *See Nash-Wilson Funeral Home, Inc. v. Greer*, 417 S.W.2d 562, 565 (Tenn. Ct. App. 1966). "Reconciling apparently conflicting testimony and evaluating the witnesses' credibility are, in the first instance, the jury's responsibilities." *Grissom*, 817 S.W.2d at 683; *see White v. Seier*, 264 S.W.2d 241, 243 (Tenn. Ct. App. 1953) (refusing to set aside the jury's liability determination in a tort action based on conflicting evidence). The jury was free to believe one witness and disbelieve another. *See Ferguson*, 451 S.W.3d at 383 ("The jury can disregard the testimony of a witness it does not find to be credible.").

3

We conclude that this record contains material evidence in support of the jury verdict. Ms. Hyatt denied being distracted. And she provided a reasonable explanation for her apology. Based on Ms. Hyatt's testimony, the jury could reasonably find that she stopped, looked both ways, and only entered the intersection after verifying that the coast was clear. The jury could also have determined that the location of the damage to both vehicles tended to support Ms. Hyatt's account of the accident.

For the most part, Mr. Justice's arguments are based on countervailing evidence that the jury was free to disregard. *See id.* He also argues that the only reasonable inference from the location of the damage to the vehicles and the resting positions of the cars is that Ms. Hyatt was at fault. But Ms. Hyatt offered a different viewpoint. And we will not second-guess the jury's evaluation of conflicting evidence. *Id.*

Lastly, Mr. Justice contends that Ms. Hyatt admitted liability when she testified that she never saw his truck before the accident. In his view, this can only mean that she was not keeping a proper lookout. *See Harris v. Miller*, 144 S.W.2d 7, 9 (Tenn. Ct. App. 1940) ("It is the duty of the driver of an automobile to keep a diligent lookout ahead and to see all that comes within the radius of his line of vision, both in front and to the side."). We disagree. Mr. Justice's theory requires the jury to assume his truck was already in the intersection when Ms. Hyatt arrived. To the contrary, a reasonable juror could conclude that Ms. Hyatt arrived first, and that Mr. Justice's truck was not in her line of vision when she entered the intersection.

### III.

Because there is material evidence to support the jury verdict, we affirm.

    s/ W. Neal McBrayer
W. NEAL MCBRAYER, JUDGE

4