Alice BROWN, Plaintiff/Appellee,

v.

Burnis Odell NULL and Pre–Fab Transit Company, Defendants/Appellants.

Court of Appeals of Tennessee,
Middle Section, at Nashville.

June 30, 1993.

Application for Permission to Appeal
Denied by Supreme Court
Oct. 4, 1993.

Roland M. Lowell, Leitner, Warner, Moffitt, Williams, Dooley, Carpenter & Napolitan, Nashville, for defendants appellants.

Allan D. Kerns, Kerns & Menke, Dickson, for plaintiff-appellee.

## OPINION

TODD, Presiding Judge.

The captioned defendants have appealed from a jury verdict and judgment in favor of the captioned plaintiff in the amount of $100,-000 as damages for personal injuries sustained by plaintiff while a passenger in a vehicle which struck a tractor-trailer owned by the corporate defendant, which was operated by the individual defendant, and which was blocking the highway at night.

Appellants have presented five issues which will be discussed in the order deemed most appropriate. Appellants' fifth issue is:

    5. Whether the trial court erred by not allowing Defendants to exercise challenges for cause against two potential jurors who were either currently or formerly represented in civil matters by Plaintiff's attorney, Mr. Kerns.

Rule 6 of the Rules of this Court states in pertinent part:

    Briefs.—(a) Written argument in regard to each issue on appeal shall contain:

    1. A statement by the appellant of the alleged erroneous action of the trial court which raises the issue and a statement by the appellee of any action of the trial court which is relied upon to correct the alleged error, with citation to the record where the erroneous or corrective action is recorded.

    2. A statement showing how such alleged error was seasonably called to the attention of the trial judge with citation to that part of the record where appellant's challenge of the alleged error is recorded.

    3. A statement reciting wherein appellant was prejudiced by such alleged error, with citations to the record showing where the resultant prejudice is recorded.

    4. A statement of each determinative fact relied upon with citation to the record where evidence of each such fact may be found.

    (b) No complaint of or reliance upon action by the trial court will be considered on appeal unless the argument thereon contains a specific reference to the page or pages of the record where such action is recorded. No assertion of fact will be considered on appeal unless the argument upon such assertion contains a reference to the page or pages of the record where evidence of such fact is recorded.

Appellants cite pages 13, 20, 21, 23, 24 of the record. On page 13, the jurors, Bell and Stinson testified on voir dire that they had previously been represented in divorce proceedings by counsel for plaintiff. On page 20, both said jurors stated that, if they should need an attorney, they would probably use the same counsel again, and juror Bell denied that he would "give him more favor in this case." On page 23, juror Stinson answered "yes" to a question as to whether his willingness to reemploy plaintiff's counsel "indicates that your association with him is considered to be favorable." On page 24, both said jurors answered "no" to the question, "Is there a reasonable possibility that your association with Mr. Kerns may affect your verdict."

On page 25 (not cited) the following occurred:

THE COURT: And again I am not trying to put words in your mouth, but each case you feel that each case is a different one, or as I have heard some people in the country say, 'Every tail sits on its own bottom.'

MR. BELL: Yes.

THE COURT: And that is basically the way you feel?

MR. BELL: Yes.

THE COURT: I think the two jurors are competent. You gentlemen may pass in your slips when you're ready.

(WHEREUPON, the slips are passed in by counsel for both the plaintiff and defendant.)

THE COURT: Number 35, Mr. Ammon Stinson, you stand down, please.

(The slips passed in by counsel evidently indicated their peremptory challenges.)

No evidence is cited or found in the record indicating that either juror was challenged for cause or where such right was denied. It is suggested in plaintiff's brief that the reference in the above quotation indicates that juror Stinson was challenged for cause, but, other than the above quotation, no evidence is cited or found to support this suggestion.

Appellants argue without citation to the record that they were allowed only four peremptory challenges. Pursuant to Rule 6, this argument cannot be considered.

There is no showing of any prejudicial result from any wrongful denial of right to a fair jury.

No merit is found in appellants' fifth issue.

Appellants' third issue is:

3. Whether the trial court erred in allowing into evidence the Appellant's internal accident report containing hearsay statements.

Appellants' brief cites pages 170, 175, 179, 181 in support of this issue. On page 175, plaintiff's counsel read from the deposition of Mrs. Eperson, an employee of the corporate defendant as follows:

'Q. When he had this charge of preventable accident placed on his record as result of this December 11, 1987, accident, in addition to having that placed on his record did he receive any kind of suspension from work or any other disciplinary action?

A. I don't know.'

Then on page 15, beginning at 24.

'Q. He never told you—talking about Mr. Null—he never told you in your conversation with him that he saw Mr. Edwards' car speeding?

A. No, sir.

Q. Did he ever tell you that he saw Mr. Edwards' vehicle before the accident occurred?

A. No, sir.

Q. What did he tell you as to when he first did see the Edwards' vehicle?

A. As I said before, I only talked to him as far as to answer the interrogatories you submitted. In order to answer that question I would have to go back and look at the interrogatories that you submitted to find out if he mentioned that at all. I don't know if the subject ever came up. I don't think I can answer that.'

Then on page 17, line 6.

'Q. Did Mr. Null report to you anything about Mr. Edwards failing to keep a proper look out ahead?

A. Not that I remember.'

On page 175, counsel read from the same deposition as follows:

'A. Yes, this is a report that was prepared by Mr. Null.'

Then that is an exhibit, which I will submit to you later as part of the interrogatories.

Then on page 6, line 1.

'Q. Was Mr. Null disciplined in any way for this accident?

A. Yes, he was.

Q. What was that?

A. He received a chargeable accident, a preventable, chargeable accident that was added to his driving record.

Q. What does that do to him?

A. In the driver's policy if they get X number of preventable accidents in any 12 month period of time consecutive 12 month period of time, they are discharged.

On page 178, 179, 180, 182, 183, 184 the following is recorded:

MR. KERNS: I would like to have admitted the next exhibit the accident report that was referred to and provided as part of the request for production of documents. The accident report that Mr. Null filled out that was referred to in the deposition.

MR. LOWELL: It is not the telephone report?

MR. KERNS: No.

THE COURT: I have one problem with it Mr. Kerns. If Counsel will approach the bench, please.

(Bench conference off the record.)

THE COURT: Ladies and gentlemen, if you will step out.

(WHEREUPON, the jury leaves the courtroom.)

THE COURT: As I have stated at our bench conference, the only problem I had with it was stated down here, charges failure to yield. By the way, which looks to be in other handwriting. And I am not aware of that charges are ever admissible for any purpose.

MR. KERNS: Guilty pleas would be, but not charges.

THE COURT: Right.

MR. KERNS: I have no problem whiting that out.

THE COURT: Now Mr. Lowell, did you have any other objection to it?

MR. LOWELL: Comment was made that Mr. Null did that. The question, you know, who wrote it. No, we never could identify who made that. It could be another report like the one in the deposition.

\*    \*    \*    \*    \*    \*

THE COURT: I haven't seen them, but Mr. Lowell, what is the objection to that document?

MR. LOWELL: It is hearsay, as far as—it is going to be introduced, obviously, for the contents, the truth or falsity of the contents and we don't have background information one way or the other.

\*    \*    \*    \*    \*    \*

THE COURT: Was this attached to the deposition?

MR. KERNS: No, that was attached to the request for production of documents, and I was questioning her about that.

MR. LOWELL: Discovery.

MR. KERNS: And I went on and said 'This is an official company record?' 'Yes.' 'Part of the company file in this type of case?' 'Yes.' 'These records are regular, routine, kept in the normal course of business, are they not?' 'Yes.' 'Is this accident report Mr. Null filled out?' 'Yes.'

You know, it is there and—

THE COURT: All right. Now what do you say, Mr. Lowell?

MR. LOWELL: Same thing. For discovery is one thing, but for purposes of introduction at trial is another without the proper bases. We produced whatever we had in response to discovery and that was produced.

THE COURT: And this deposition is being offered as evidence as if the witness was in court. And she has testified about certain things concerning the preparation of this document. You have objected to hearsay. Are you still objecting to it?

MR. LOWELL: Yes.

THE COURT: The objection is overruled. The Court finds this is a document prepared in the regular course of business and will be admitted as Exhibit 6.

MR. LOWELL: Can we have the reference to the citation deleted, and do it in such a fashion so that it is done and rexeroxed so that it don't bleed through?

THE COURT: Mr. Lowell, the court will deputize you personally to—you have created your own trap—I will deputize you to make the copies in whatever manner is suitable to you. I will not even allow you to delegate it to Mr. Mangelsdorf.

\*    \*    \*    \*    \*    \*

MR. KERNS: I would like to read a small portion of this Exhibit No. 9, and then pass it to the jury. This is an accident report we referred to in this deposition I read to you, part of the records of PreFab.

■ It is seen that the Trial Court admitted a document as exhibit 6. Exhibit 6 is a picture, not a document. An accident report appears in the record as exhibit 9, but the record contains no evidence of any objection to the reading of same or ruling on the objection. In this confused state of affairs, this Court is unable to discern what was or was not objected to and ruled upon by the Trial Court. Appellant argues that the report was prejudicial because it mentions discipline of the driver. In the light of the direct testimony of Ms. Eperson as to the discipline of the driver, to which no objection is recorded, the admission of a report to the same effect was not prejudicial. TRAP Rule 36(b).

No merit is found in appellants' third issue.

Appellants' second issue is:

2. Whether any material evidence existed at the trial of this case to support the jury's grossly excessive verdict against the defendants for $100,000.00.

■ Plaintiff was injured when the vehicle she occupied collided with defendant's truck which was blocking the highway without lights at night. Plaintiff's vehicle went under the bed of the truck and its top was crushed. Plaintiff was hit in the face and knocked out. Upon reviving she crawled out a window. Her face began to swell. She was hurting all over. Her nose was bleeding and blood was all over her. She had a terrible headache. She was covered with bits of glass which was in her pockets and shoes. She had cuts and nicks all over her face, head, arms, and hands.

Unfortunately, the record contains no evidence as to the transportation, emergency attention and diagnosis of plaintiff's injuries on the date of her injuries. The record does include her later treatment by physicians.

Plaintiff, who was employed at Montgomery Bell Park as room clerk, did not work for six weeks. During the first month, she stayed in bed except for visits to her doctor and physical therapy, and was unable to eat solid food, taking all nourishment by straw. Her neck was stiff and she was sore all over.

She was treated with whirlpool baths and electric shock.

A neurosurgeon testified that he saw her in the emergency room of Parkview Medical Center in Nashville after her initial treatment at Goodlark Hospital in Dickson. He found injury to the muscles and ligaments of the neck and protrusion of an intervertebral disc for which he prescribed medication and physical therapy. He found a hematoma for treatment of which he referred plaintiff to a plastic surgeon. His prognosis included probable future pain and disability.

The plastic surgeon found significant swelling of the left cheek and infraorbital area, numbness of the left cheek and along the ridge and area of teeth of the left upper side of the mouth. She had "black eyes," swollen tissue and a collection of blood called hematoma. She had a collection of blood surrounding the infraorbital nerve, which is a distribution nerve. The plastic surgeon performed surgery under general anesthetic to remove the accumulation of blood which amounted to the size of three walnuts or one egg. The infraorbital nerve appeared to be badly injured by blunt trauma but intact. Packing was left in the surgical area and later removed.

After the surgery there was a decrease in swelling but the numbness and some swelling persisted. After several months observation, the plastic surgeon pronounced the residual swelling and numbness to be permanent. The numbness is similar to that experienced after an injection for dental work. The plastic surgeon testified that there are no presently known means of relieving the residual swelling and the numbness.

At the time of trial plaintiff still experienced pain in turning her head and weakness and numbness in her fingers which limited her efficiency at work. She was unable to continue her recreational activities of bowling, camping, canoeing, horse riding, and gardening.

Plaintiff's lost wages were $1,274.56, and her medical expenses were $5,131.12. At the time of trial, plaintiff was 47 years old.

■ There is no mathematical rule or formula for computing damages in a negligence

case. *Smith v. Bullington,* Tenn.App.1973, 499 S.W.2d 649.

In a suit for personal injuries, the law can only say that plaintiff is entitled to reasonable compensation for bodily injuries, pain and suffering, disability, loss of earnings and expenses. It cannot furnish any fixed or certain standard for measuring such damages, but must leave the amount of the judgment of the jury guided by the facts and circumstances of the case. *Yellow Cab Co. of Nashville v. Pewitt,* 44 Tenn.App. 572, 316 S.W.2d 17 (1958).

■ The amount to be awarded in personal injury cases is primarily for the jury. *Lunn v. Ealy,* 176 Tenn. 374, 141 S.W.2d 893 (1940); *Shell Oil Co. v. B. Blanks,* 46 Tenn. App. 539, 330 S.W.2d 569 (1960).

■ The verdict of a jury, approved by the trial judge in a personal injury case is entitled to great weight in the reviewing court in the absence of a showing of fraud or corruption. *Blalock v. Temple,* 38 Tenn.App. 463, 276 S.W.2d 493 (1955).

In the present case, the facial disfiguration and nerve damage to a 47 year old female whose work requires constant contact with the public, together with her pain and suffering, past and future, lost wages and medical expenses are sufficient to justify the award of $100,000 damages. There is therefore no reason to set aside the verdict or suggest a remittitur.

No merit is found in appellants' second issue.

Appellants' fourth issue complains of a statement in the argument of plaintiff's counsel to the jury that:

Golly, they go out and have all this stuff blown up, *money rolling out of their ears* to have this done.

In oral argument to this Court, plaintiff's counsel admitted using the quoted language to the jury and that it was improper, but argued that the impropriety was waived by failure to object at the time. While this legal argument is correct, this does not mean that the Courts are powerless to deal with improper courtroom conduct unless timely objection is made.

Such language presents to opposing counsel a difficult situation in which more might be lost than gained by objecting in the presence of the jury. In such case, the better practice is for the Trial Judge to excuse the jury, admonish counsel and properly instruct the jury upon its return to the Court, all without any prompting of counsel. It is not reversible error to fail to do so, but it promotes the fairness of the judicial process to do so.

■ The Code of Professional Responsibility, DR 7–106 asserts that

(c) In appearing in his professional capacity before a tribunal, a lawyer *shall* not:

(1) State or allude to any matter that he has no reasonable basis to believe is relevant to the case. . . .

For persistent, repeated occurrences of the same or similar misconduct, the Trial Court has the power to cite for contempt or certify to the Disciplinary Board.

It would not be proper for this Court to prejudice the rights of plaintiff because of the conduct of her lawyer, unless it appeared that such misconduct did affect the verdict of the jury. Since the verdict was justified by the evidence, it does not appear that it was the product of the misconduct.

The fourth issue presents no cause for remedial action by this Court.

Appellants' second issue complains of an ex parte communication by the Trial Judge to the foreman of the jury during its deliberation. When the jury returned to the courtroom to report its verdict, all jurors responded "yes" to the inquiry of the Trial Judge as to their assent to the verdict.

Thereafter, the following occurred:

THE COURT: May I ask you, Mr. Waynick, you came out and asked me a question about filling in of the verdict form.

Had you the jury, had the jury arrived at that dollar amount before you talked to me?

JURY FOREMAN: Yes, sir.

THE COURT: You had?

JURY FOREMAN: Yes, sir.

THE COURT: And your question to me was, 'Could you give more than what they sued for.' Was basically the question.

JURY FOREMAN: I was just wondering if that was the maximum amount.

THE COURT: But ya'll had determined $100,000.00?

JURY FOREMAN: Oh, yes.

THE COURT: And that is true, ladies and gentlemen, all of you?

ALL JURORS: Yes.

THE COURT: Anything else from the jury? Thank you, very much, ladies and gentlemen. You may be excused.

(WHEREUPON, all jurors leave.)

THE COURT: As I have previously advised Counsel, I was sitting in chambers minding my own business, so to speak, when the foreman came out—for the purpose of the record, let me kind of explain how our courtroom is laid out. Usually the court officers stay in the courtroom to serve the jury. And the hallway that goes back in the clerk's office where my chambers is, is another room, door to the jury room. And the foreman came out there and wanted to see me. And I immediately got up and went to see what he wanted. I had no inkling they had arrived at a verdict. I thought something about like wanting to go to supper or 'Can we take a break?' Or something like that. And I habitually handle those things without bringing everybody into court, and so forth, and tell them they can go to supper or however they want to do it.

He showed me the verdict form. It was filled in down to question 8. That question 8 was amount of damages and it was blank. I did not notice the answers at the time that were above it, because I was busy getting in over my head talking to the foreman. He asked me, 'What figure do I fill in there?' And I immediately realized I had made a mistake. That I should not have talked to him and should have brought him into open court to ask the question. And I just answered that, 'Just put the damages, how much the Plaintiff is damaged.' And he said, 'Can we put over $100,000.00?' And I thought that was certainly just an easy enough question to answer. And I said, 'No, you can't award them more than they have sued for.' And he said, 'Thank you.' And turned right around and walked back into the jury room. And I immediately left and went into the hall and went in search for you gentlemen.

So that is the entire circumstance as I got myself into the. [sic]

Is anything else before we want to adjourn? I want to put that on the record in case somebody wants to take it up at a later time, because it happened.

Appellants argue:

Had the trial court allowed the jury to return a verdict higher than the amount prayed for in the Complaint, the jury would have returned an inconsistent verdict which mandates a new trial under Tennessee law. *Whittemore v. Classen,* 808 S.W.2d 447 (Tenn.App.1991). In *Whittemore,* a new trial was granted to defendant when plaintiff was awarded $650,000.00 and plaintiff's Complaint prayed for $300,00.00 [sic] on her behalf and $50,000.00 on behalf of her husband; See also *Slaten v. Earl Campbell Clinic Hospital,* 565 S.W.2d 483 (Tenn.1978).

Instead of allowing the jury to return its verdict (which would have been an inconsistent verdict) the trial court in error limited the jury's award to the amount plaintiffs' prayed for in the Complaint which resulted in prejudice to the defendant.

Apparently appellants conceive that they have a right to have a jury bring in an erroneous verdict so that appellants might thereby obtain a new trial at their option. Such a right does not exist; but if there were such a right, it would never mature because a knowledgeable trial judge would refuse to accept a verdict for more than the ad damnum, and would instruct the jury to return to its deliberation and agree upon a verdict within the ad damnum.

Moreover, the instruction given to the foreman correctly stated the law, and appellants make no argument that it was incorrect. If the parties had been offered an opportunity to be heard upon the text of the

requested instruction, no better text could have been suggested.

Furthermore, it is uncontroverted that the amount of the verdict had already been agreed upon by the jury before the instruction was given, and it was therefore not prejudicial to defendants. TRAP Rule 36(b).

No reversible error is presented by appellants' issues.

The judgment of the Trial Court is affirmed. Costs of this appeal are taxed against the appellants. The cause is remanded to the Trial Court for any necessary further proceedings.

Affirmed and Remanded.

LEWIS and KOCH, JJ., concur.