**IN THE COURT OF APPEALS OF TENNESSEE,**
**AT NASHVILLE**

**FILED**

**February 11, 1999**

**Cecil W. Crowson**
**Appellate Court Clerk**

|  |  |  |
|---|---|---|
| **SHERRY SCHLEICHER**, | ) | Maury County Circuit Court |
|  | ) | No. 6415 |
| Plaintiff/Appellant. | ) |  |
|  | ) |  |
| VS. | ) | C.A. No. 01A01-9711-CV-00649 |
|  | ) |  |
| **FOUNDERS SECURITY LIFE** | ) |  |
| **INSURANCE CO.,** | ) |  |
|  | ) |  |
| Defendant/Appellee. | ) |  |
|  | ) |  |

From the Circuit Court of Maury County at Columbia.
**Honorable Robert L. Jones, Judge**

**Joe F. Gillespie, Jr.**, Joelton, Tennessee
Attorney for Plaintiff/Appellant.

**Mark S. LeVan**, COX, LEVAN, SPRADER & PATTON, PLLC, Nashville, Tennessee
Attorney for Defendant/Appellee.

OPINION FILED:

**AFFIRMED IN PART, REVERSED IN PART AND REMANDED**

**FARMER, J.**

**HIGHERS, J.**: (Concurs)
**TOMLIN, Sp. J.**: (Concurs)

In this premises liability action, Plaintiff Sherry Schleicher filed a complaint against Defendant Founders Security Life Insurance Company (Founders Security),[1] seeking damages for injuries incurred as a result of a fall sustained by Schleicher while exiting a building owned by Founders Security. Schleicher's complaint sought recovery under the theories of common law negligence and negligence per se. The jury returned a verdict finding that Schleicher was forty-nine percent at fault, finding that Founders Security was fifty-one percent at fault, and assessing Schleicher's damages at $20,073.92. Both parties have appeal. For the reasons set forth below, we uphold the jury's findings regarding the relative fault of the parties. With respect to the jury's assessment of damages, however, we reverse and remand to the trial court for a new trial.

### *Factual and Procedural History*

On February 22, 1994, Schleicher arrived at the "Professional Building" in Columbia, Tennessee for a 3:30 appointment with Dr. Michael Skinner, her periodontist. At the time of her arrival, it was raining and there was low visibility. Schleicher parked her vehicle and, after opening her umbrella, rushed inside the Professional Building through the front entrance. After her appointment, Schleicher prepared to exit through this same doorway. She noticed that Dr. Skinner and an assistant were pushing some medical equipment toward the exit and proceeded to hold the door open for them. Schleicher then stepped through the doorway, lost her balance, and fell backwards onto the ground, injuring her hip.[2]

Dr. Skinner drove Schleicher to Maury Regional Hospital. Schleicher received Demerol injections to ease her pain and was admitted to the hospital. The following morning, Schleicher underwent hip replacement surgery. She was discharged nine days later and transported by ambulance to her home in Primm Springs, Tennessee. For the next two months, Schleicher was

---

[1]Subsequent to the filing of this lawsuit, the Defendant's name has been changed to "Modern American Life Insurance Company." For purposes of this opinion, we will continue to refer to the Defendant as "Founders Security."

[2]There is a factual dispute regarding the precise manner in which Schleicher attempted to exit Dr. Skinner's office. Schleicher testified that, when she stepped through the doorway, she was facing to the side and looking at the frame of the door. Schleicher further explained that she was "sidestepping" through the door. During a recorded telephone conversation with an investigator of Founders Security, however, Schleicher stated that she was facing the hallway and backing out the door when the accident occurred.

essentially confined to a hospital bed, received home health care, and was required to use a bedside commode. She was initially unable to walk without the aid of others but, after her first week of recuperation at home, she was able to walk unassisted.

During the first three weeks following her surgery, Schleicher was placed on what she described as "strong pain medication." After this period, however, Schleicher took only Ibuprofen to treat her pain. At the time of trial, Schleicher walked with an occasional limp, requiring the assistance of a cane. She also experienced some pain, stiffness, and decreased mobility following her hip replacement surgery. Dr. Eslick Daniel, the orthopedic surgeon who treated Schleicher following the accident, testified that Schleicher will likely have to undergo a second hip replacement surgery at some point in the future. The costs of this procedure are estimated at $29,150.00. Dr. Daniel further testified that, as a result of Schleicher's hip injury, Schleicher has a partial permanent impairment rating of fifteen percent to the body as a whole and thirty-seven percent to the right leg.

On January 10, 1995, Schleicher filed a complaint against Founders Security, the owner of the Professional Building, alleging common law negligence and negligence per se. In its answer, Founders Security raised comparative fault as an affirmative defense. The matter came to be heard by a jury on July 29, 1997 and July 30, 1997. At the conclusion of all the proof, the trial judge instructed the jury that, as a matter of law, the Professional Building was not in violation of either section 1101 or section 1102 of the Southern Standard Building Code. The jury found that Founders Security was fifty-one percent at fault and that Schleicher was forty-nine percent at fault. Additionally, the jury found that Schleicher had incurred damages totaling $20,073.92. Taking into account the jury's assessment of fault, the trial judge entered an order granting to Schleicher a judgment in the amount of $10,237.70. Schleicher filed a motion for additur or new trial and Founders Security filed a motion for judgment notwithstanding the verdict. The trial judge denied both motions. Both parties have appealed.

### *Issues*

The questions presented on appeal, as we perceive them, are as follows:

I.  Did the trial court err in denying Schleicher's motion for additur or new trial?

II.  Should the trial court have granted a directed verdict in favor of Founders Security with respect to Schleicher's claims of negligence per se based on alleged violations of the Southern Standard Building Code?

III.  Did the trial court err in excluding testimony regarding the substance of amendments to section 1117.1(e) of the Southern Standard Building Code made after the construction of the Professional Building?

IV.  Did the trial court err in excluding testimony regarding whether the Professional Building was in compliance with the Americans with Disabilities Act?

V.  Did the trial court err in charging the jury regarding "open and obvious" conditions?

### The Jury's Assessment of Damages

In personal injury cases, the amount of damages to be awarded is left primarily within the sound discretion of the jury.  *See, e.g., Transports, Inc. v. Perry*, 414 S.W.2d 1, 5 (Tenn. 1967); *Hunter v. Burke*, 958 S.W.2d 751, 757 (Tenn. App. 1997).  There is no mathematical rule or formula that should be used when computing damages.  *See, e.g., Brown v. Null*, 863 S.W.2d 425, 429-30 (Tenn. App. 1993)(citing *Smith v. Bullington*, 499 S.W.2d 649, 661 (Tenn. App. 1973)).  Rather, the jury is guided by the rule that the injured plaintiff is entitled to "reasonable compensation for bodily injuries, pain and suffering, disability, loss of earnings and expenses."  *Brown*, 863 S.W.2d at 430.  A jury's assessment of damages, once approved by the trial judge, is entitled to a great deal of weight on appeal.  *See, e.g., D. M. Rose & Co. v. Snyder*, 206 S.W.2d 897, 908 (Tenn. 1947); *Van Sickel v. Howard*, 882 S.W.2d 794, 795 (Tenn. App. 1994).  In reviewing the jury's findings, we are required to "take the strongest legitimate view of all the evidence to uphold the verdict, to assume the truth of all that tends to support it, to discard all to the contrary, and to allow all reasonable inferences to sustain the verdict." *See Poole v. Kroger Co.*, 604 S.W.2d 52, 54 (Tenn. 1980) (quoting *Southern Ry. Co. v. Sloan*, 407 S.W.2d 205, 209 (Tenn. App. 1965)).  When a party complains that the amount of the jury verdict is inadequate, we must examine the facts and circumstances of the case and determine "whether the evidence so greatly preponderates against the amount awarded as to show passion, prejudice or unaccountable caprice." *Van Sickel*, 882 S.W.2d at 795 (citing *Board of Mayor and Aldermen v. Moore*, 232 S.W.2d 410, 413 (Tenn. App. 1950);

*Karas v. Thorne*, 531 S.W.2d 315, 317 (Tenn. App. 1975)). If there is any material evidence in the record to support the jury's assessment of damages, the verdict must be affirmed. *See Poole*, 604 S.W.2d at 54-55 (citing *Southern Ry. Co.*, 407 S.W.2d at 209); T.R.A.P. 13(d).

In the instant case, the parties stipulated that, as a result of the accident, Schleicher had incurred medical expenses totaling $20,073.92. When Schleicher arrived at the hospital immediately following the accident, she was given injections of Demerol to ease her pain. Schleicher testified that she experienced pain and stiffness following her hip replacement surgery. For the first three weeks following the surgery, Schleicher was placed on what she described as "strong pain medication." Later, however, Schleicher took only Ibuprofen to treat her pain. Dr. Daniel testified that Schleicher will probably have to undergo a second hip replacement surgery in the future. Dr. Daniel further testified that, after this procedure, Schleicher will likely experience pain similar to the pain experienced after the first hip replacement surgery. The estimated cost of a second hip replacement surgery is $29,150.00. Dr. Daniel testified that, as a result of the accident, Schleicher has a partial permanent impairment of fifteen percent to the body as a whole and thirty-seven percent to the right leg. Schleicher testified that, prior to the accident, she enjoyed many physical activities including weight training, hiking, horseback riding, and yard work. Thelma Schleicher[3] testified that she and Schleicher used to go walking and bicycling together but further stated that Schleicher no longer has the stamina to engage in those activities. Finally, Schleicher testified that, if she underwent a second hip replacement surgery, she would be confined to her house and unable to work for approximately two months. At the time of trial, Schleicher had obtained a degree in nursing and was preparing to take an examination that would allow her to practice as a nurse in the state of Tennessee. Thelma Schleicher, who is also a nurse, testified that the average wage of a nurse is $16.00 to $29.00 per hour.

The jury found that Schleicher had suffered a total of $20,073.92 in damages as a result of the accident. This figure is equal to the amount of Schleicher's stipulated medical expenses. Schleicher argues on appeal that the amount of the jury verdict was inadequate. Specifically, she contends that the jury acted with "bias, passion, and caprice" in apparently disregarding the

---

[3]Thelma Schleicher is related to the Plaintiff by marriage.

aforementioned testimony concerning her past and future pain and suffering, future medical expenses, permanent impairment, loss of enjoyment of life, and future lost wages.[4]

The damages sought by Schleicher for future pain and suffering, future medical expenses, and future lost wages are somewhat speculative. Dr. Daniel testified that Schleicher will "probably" be required to undergo a second surgery. Because Dr. Daniel was not able to state with certainty that this procedure would be necessary, the jury, in its discretion, could have concluded that Schleicher did not carry her burden of proof with respect to these future damages. Additionally, there was conflicting evidence regarding Schleicher's permanent impairment and loss of enjoyment of life. Dr. Daniel testified that Schleicher is partially disabled as a result of the accident. He further stated, however, that her injuries will not prevent her from engaging in most activities, including horseback riding or working as a nurse. Although Dr. Daniel testified that he placed no physical restrictions on Schleicher following her recovery, he noted that Schleicher should take care of her hip and should not overdo her activities. Given this testimony, the jury could have concluded that Schleicher did not prove that she is permanently impaired or that she has suffered a loss of enjoyment of life as a result of her injuries.

In assessing Schleicher's damages at $20,073.92, the exact amount of her stipulated medical expenses, the jury implicitly found that Schleicher did not experience any pain and suffering

_____

[4]After the jury rendered its verdict, the trial judge questioned the jurors regarding the manner in which the jury reached its decision. One juror explained that there was disagreement among the jurors regarding whether Schleicher's negligence exceeded the negligence of Founders Security. In order to reach a unanimous verdict, the jurors compromised. The jury found that Schleicher's negligence was slightly less than the negligence of Founders Security but limited Schleicher's damages to the amount of her past medical expenses.

Under the Tennessee Rules of Evidence, we are not permitted to consider the statements of a juror unless they relate to the question of "whether extraneous prejudicial information was improperly brought to the jury's attention, whether any outside influence was improperly brought to bear upon any juror, or whether the jurors agreed in advance to be bound by a quotient or gambling verdict." T.R.E. 606(b). *See also Goss v. Hutchins*, 751 S.W.2d 821, 828 (Tenn. 1988); *State v. Blackwell*, 664 S.W.2d 686, 688 (Tenn. 1984); *Terry v. Plateau Elec. Coop.*, 825 S.W.2d 418, 423 (Tenn. App. 1991). A quotient or gambling verdict is one reached by averaging the figures suggested by each member of the jury. *See, e.g., Odom v. Gray*, 508 S.W.2d 526, 532 (Tenn. 1974). In the instant case, there is no allegation that the jury verdict was tainted by extraneous information or outside influence. Additionally, there is no allegation that the jurors agreed to be bound by a quotient or gambling verdict. Thus, although it appears that the jury may have improperly failed to separate the issues of liability and damages, we must nevertheless disregard this information when considering whether the trial court erred in denying Schleicher's motion for additur or new trial.

as a result of her injuries. As discussed above, however, there is substantial evidence in the record establishing that Schleicher experienced pain and suffering following the accident and her hip replacement surgery. In cases involving subjective symptoms, which physicians are unable to clinically corroborate, the jury must rely heavily on the credibility of the injured party's testimony. *See Buchanan v. Harris*, 902 S.W.2d 941, 943 (Tenn. App. 1995). Ms. Schleicher suffered a fractured hip which required surgery. Founders Security made no attempt to refute Schleicher's testimony or question the credibility of other witnesses who offered testimony regarding Schleicher's past pain and suffering.[5] Rather, Founders Security contends that Schleicher is not entitled to recover damages for past pain and suffering because her pain was adequately controlled with medication. Implicit in this argument is an admission that Schleicher did, in fact, experience pain and suffering as a result of the accident. Taking the strongest legitimate view of the evidence to uphold the verdict, as we must under *Poole*, we are unable to find any material evidence in the record to support the jury's implicit finding that Schleicher did not experience pain and suffering. Such a finding can only be explained by concluding that, in the instant case, the jury acted with "passion, prejudice, or unaccountable caprice."

Accordingly, we find that the trial court erred in denying Schleicher's motion for additur or new trial. Appellate courts do not have the power to suggest an additur after the trial court has refused to do so. *See Cortazzo v. Blackburn*, 912 S.W.2d 735, 745 (Tenn. App. 1995); *State ex. rel. Shaw v. Shofner*, 573 S.W.2d 169, 174 (Tenn. App. 1978); *Loftis v. Finch*, 491 S.W.2d 370, 374 (Tenn. App. 1972). We are permitted, however, to reverse the jury verdict and order a new trial. *See Loftis*, 491 S.W.2d at 374, 377. In the instant case, we reverse the jury's assessment of damages and remand to the trial court for a new trial on the issue of damages.

### Negligence Per Se

---

[5]In fact, counsel for Founders Security essentially conceded that the damages claimed by Schleicher were genuine when, during opening statements, he commented to the jury as follows:

> [T]here is not a great deal of dispute about the damages. Clearly the lady was hurt, broke her hip, had the surgery, was in the hospital, incurred the medical expenses, will have to have it again more than likely in the future. There's not much question about that.

In her amended complaint, Schleicher alleged that Founders Security is liable under the theory of negligence per se because the Professional Building does not comply with three sections of the Southern Standard Building Code.[6] These sections provide in pertinent part as follows:

> **Section 1101(b).** Means of egress shall consist of continuous and unobstructed paths of travel to the exterior of a building at all times.

> **Section 1102(a).** Means of egress is a continuous path of travel from any point in a building or a structure to the open air outside at ground level and [consists] of two separate and distinct parts: (1) the exit access, and (2) the exit. A means of egress comprises the vertical and horizontal means of travel and may include the room space, doorway, corridor, hallway, passageway, stairs, ramp, lobby, fire escape, escalator, and other paths of travel.

> **Section 1117.1(e).** Exit landings shall not open onto a flight of stairs. A landing of at least the width of the door shall be provided.

S. Standard Bldg. Code §§ 1101(b), 1102(a), 1117.1(e) (1976 & Supp. 1977). After Schleicher presented her case-in-chief, Founders Security moved for a directed verdict. Although the trial judge denied the motion for a directed verdict, the court announced to counsel that he "will not give a negligence, per se, instruction on the egress provisions of the code." At the conclusion of all the proof, the trial judge instructed the jury that, as a matter of law, the Professional Building did not violate either section 1101(b) or section 1102(a) of the Southern Standard Building Code. The trial judge further instructed the jury that it must decide whether the Professional Building was in violation of section 1117.1(e) of the Southern Standard Building Code. On appeal, Schleicher argues that the trial court erred in directing a verdict with respect to sections 1101(b) and 1102(a). Founders Security, however, complains that, in addition to sections 1101(b) and 1102(a), the trial judge should have also directed a verdict against Schleicher with respect to her negligence per se claim based on section 1117.1(e).

When ruling on a motion for directed verdict, the trial judge is obligated to consider the evidence in the light most favorable to the party opposing the motion, drawing all reasonable

---

[6]The Professional Building was constructed in 1978. At the time of its construction, the City of Columbia had adopted the 1976 edition and the 1977 revisions of the Southern Standard Building Code. *See* Columbia, Tenn., Ordinance 1085, 1086 (Apr. 11, 1977)(amending Columbia, Tenn., Building, Utility and Housing Codes §§ 4-101, 4-402 (1977)).

inferences from the evidence in favor of the nonmoving party and disregarding all countervailing evidence. *See, e.g., Tschira v. Willingham*, 135 F.3d 1077, 1087 (6th Cir. 1998); *Conatser v. Clarksville Coca-Cola Bottling Co.*, 920 S.W.2d 646, 647 (Tenn. 1995). A directed verdict may be granted if, under the undisputed facts of the case, reasonable minds could draw only one conclusion. *See, e.g., Eaton v. McLain*, 891 S.W.2d 587, 590 (Tenn. 1994). If there are any material facts in dispute or if there is any doubt regarding the conclusion to be drawn from the evidence, the motion must be denied. *See, e.g., Bland v. Allstate Ins. Co.*, 944 S.W.2d 372, 374 (Tenn. App. 1996).

There is no dispute in the instant case regarding the physical characteristics of the front entrance to the Professional Building, the location where Schleicher's accident occurred. The entrance consists of two glass doors and an outside porch area. The porch area, which is immediately outside the doorway, is approximately seven inches lower than the floor inside the building and is at least as wide as the width of the doorway. Consequently, a person who is exiting the Professional Building must step down when going through the doorway.

It is well settled that compliance or noncompliance with a statute is a question of law. *See, e.g., Browder v. Morris*, 975 S.W.2d 308, 311 (Tenn. 1998)(citing *Myint v. Allstate Ins. Co.*, 970 S.W.2d 920, 924 (Tenn. 1998)). We think that this rule also applies to the question of whether a building is in violation of a code provision that has been adopted by city ordinance. Where, as in the instant case, the parties are in agreement regarding the physical characteristics of the building, it is for the trial court, not the jury, to determine whether the structure is in compliance with the applicable building code provisions. *See Dempsey v. Correct Mfg. Corp.*, 755 S.W.2d 798, 806 (Tenn. App. 1988). In construing these provisions, we must attempt to ascertain and give effect to the intent of the drafters of the code, looking primarily to the natural and ordinary meaning of the words used. *See, e.g., Browder*, 975 S.W.2d at 311. Because the application of code provisions is a question of law, our review the trial court's ruling with respect to sections 1101(b), 1102(a), and 1117.1(e) of the Southern Standard Building Code is *de novo* with no presumption of correctness. *See id.*

The Southern Standard Building Code requires that buildings have "means of egress." Section 1101(b) defines "means of egress" as "continuous and unobstructed paths of travel to the

exterior of a building." S. Standard Bldg. Code § 1101(b) (1976 & Supp. 1977). Section 1102(a) provides examples of paths of travel that may be classified as a "means of egress." *See* S. Standard Bldg. Code § 1102(a) (1976 & Supp. 1977). Harold Switzer, an architect who testified as an expert witness for Schleicher, stated that, because there was a drop-off immediately outside the exit doors, the path of travel to the exterior of the Professional Building was not "continuous and unobstructed." We find, however, that this conclusion is inconsistent with the plain language of section 1101(b). Section 1101(b) requires only that there be an unobstructed path to the exterior of the building. In the instant case, the seven inch drop-off that Switzer refers to as an obstruction is on the outside of the doorway. Any obstruction that is outside of the doorway cannot be within the path to the exterior of the building. Although Schleicher has alleged that there was an obstruction outside the Professional Building, she has not alleged that the path to the exterior of the Professional Building was obstructed. Thus, under the undisputed facts of this case, we find no violation of sections 1101(b) or 1102(a) of the Southern Standard Building Code.

Section 1117.1(e) of the Southern Standard Building Code provides that "[e]xit landings shall not open onto a flight of stairs. . . ." Switzer testified that, in his opinion, the Professional Building did not comply with this provision because there was a step immediately outside the doorway to the building. Switzer subsequently admitted, however, that this drop-off or single step was not the same thing as a flight of stairs. James Edwards, an architect who testified as an expert witness for Founders Security, confirmed that the exit doors of the Professional Building did not open onto a flight of stairs. Section 1117.1(e) specifically refers to a "flight of stairs." This provision does not state that a landing may not open directly onto a drop-off or single step. Thus, because it is undisputed that the exit landing of the Professional Building did not open onto a flight of stairs, we also find no violation of section 1117.1(e) of the Southern Standard Building Code.

In 1979, section 1117.1(e) was amended and now reads as follows:

> Exit doorways shall not open immediately upon a flight of stairs. A landing of at least the width of door shall be provided, which is the same elevation as the finished floor from which it is exiting.

The Building Code Revision Committee indicated that the reason for the amendment to this provision was to clarify the intent of the code. Founders Security filed a motion in limine seeking to exclude any evidence of amendments made to the Southern Standard Building Code after 1978, the year in which the Professional Building was constructed. The trial judge granted the motion. During cross examination of James Edwards, an architect who testified as an expert witness for Founders Security, counsel for Schleicher attempted to question the witness regarding the legislative history of section 1117.1(e). Upon the objection of counsel for Founders Security, the trial judge instructed Schleicher's attorney that, although he could ask Edwards if the code had been amended, he could not inquire regarding the substance of the amendments.

On appeal, Schleicher contends that the trial judge should have ruled that evidence regarding the substance of the 1979 amendment to section 1117.1(e) was admissible to impeach the testimony of Edwards. We find no evidence in the record, however, indicating that counsel for Schleicher ever requested that this evidence be admitted for the purpose of impeachment. Additionally, although Schleicher's motion for additur or new trial complains that her own expert witness, Harold Switzer, should have been allowed to testify that his opinion was based in part on the substance of the 1979 version of section 1117.1(e), it is silent regarding the use of this evidence for the purpose of impeachment. Under the Tennessee Rules of Appellate Procedure, a party seeking review of the trial court's admission or exclusion of evidence in a jury trial must bring the alleged error to the attention of the court in a motion for new trial. *See* T.R.A.P. 3(e). The motion for new trial must specify with reasonable certainty the grounds relied upon and must identify the point during the proceedings when the error allegedly occurred. *See State v. Gauldin*, 737 S.W.2d 795, 798 (Tenn. Crim. App. 1987); *State v. King*, 622 S.W.2d 77, 79 (Tenn. Crim. App. 1981); *State v. McKinney*, 603 S.W.2d 755, 760 (Tenn. Crim. App. 1980). If the alleged error is not properly raised in a motion for new trial, the issue is waived. *See State v. Caughron*, 855 S.W.2d 526, 538 (Tenn. 1993); T.R.A.P. 3(e). Thus, because Schleicher's argument with respect to the use of the 1979 version of section 1117.1(e) for the purpose of impeachment was not raised at the trial court level, we conclude that it has been waived.

In light of our finding that the Professional Building was not in violation of sections 1101(b), 1102(a), or 1117.1(e) of the Southern Standard Building Code, we hold that the trial court

should have directed a verdict in favor of Founders Security with respect to Schleicher's negligence per se claims based on these provisions. As noted above, the trial judge did not direct a verdict with respect to Schleicher's claim based on section 1117.1(e) but instead allowed the jury to consider whether the Professional Building violated this provision. Schleicher's complaint alleged both common law negligence and negligence per se. The jury returned a general verdict finding that Founders Security was fifty-one percent at fault for Schleicher's injuries but did not specify the theory of liability upon which the verdict was based. When a general verdict is rendered in an action based on multiple theories of recovery, we will not disturb the verdict if it can be upheld under at least one of these theories. *See Adkins v. Ford Motor Co.*, 446 F.2d 1105, 1108 (6th Cir. 1971); *Tutton v. Patterson*, 714 S.W.2d 268, 271 (Tenn. 1986); Tenn. Code Ann. § 20-9-502 (1994). In the instant case, there was ample evidence to support a finding of negligence on the part of Founders Security under the theory of common law negligence. Thus, we conclude that the failure of the trial court to direct a verdict with respect to section 1117.1(e) of the Southern Standard Building Code was harmless error.

*Americans with Disabilities Act*

Prior to trial, Founders Security filed a motion in limine seeking to exclude any testimony regarding whether the Professional Building was in compliance with the Americans with Disabilities Act (ADA) on the date of Schleicher's accident. The trial judge granted the motion, noting that Schleicher is not a member of the class protected by the ADA.

It is well settled that, in order for a plaintiff to recover under the theory of negligence per se based on the violation of a statute, the plaintiff must be a member of the class of persons that the statute was intended to protect. *See Sumner v. United States*, 794 F. Supp. 1358, 1367 (M.D. Tenn. 1992); *Cook v. Spinnaker's of Rivergate, Inc.*, 878 S.W.2d 934, 937 (Tenn. 1994); *Smith v. Owen*, 841 S.W.2d 828, 831 (Tenn. App. 1992). In the instant case, Schleicher did not assert a negligence per se claim based on any alleged violation of the ADA. Rather, Schleicher's position is that evidence regarding the failure of the Professional Building to comply with the ADA should

have been admissible to show that Founders Security had "constructive notice"[7] of the dangerous condition of the building. We find, however, that constructive notice was not an issue in the case at bar. Founders Security does not deny that it was aware of the condition of the Professional Building on the date of Schleicher's accident.[8] It merely contends that the condition of the building was not unreasonably dangerous. Thus, because "constructive notice" was never an issue at trial, we think that any evidence regarding the compliance or noncompliance of the Professional Building with the ADA would have been irrelevant. Accordingly, we hold that the trial court properly ruled that evidence regarding this matter was inadmissable.

### *Jury Charge Regarding "Open and Obvious" Conditions*

At the conclusion of the proof, the trial judge instructed the jury in pertinent part as follows:

> The plaintiff has the duty to use reasonable care for the plaintiff's own safety and make reasonable and responsible use of the plaintiff's senses. If the plaintiff fails to see or be aware of a defect or an unreasonably dangerous condition that is obvious or should be discovered through the use of reasonable care, the plaintiff is negligent.

Schleicher contends on appeal that the charge given to the jury with respect to "open and obvious" conditions must have confused the jurors, causing them to attribute to her a higher degree of fault. Founders Security, however, maintains that the jury instruction was consistent with the law in Tennessee regarding "open and obvious" conditions.

---

[7]Constructive notice, as opposed to actual notice, is notice that is imputed to a party by operation of law. *See Blevins v. Johnson County*, 746 S.W.2d 678, 682-83 (Tenn. 1988).

[8]Schleicher notes that counsel for Founders Security made the following statement to the trial judge:

> There has been no evidence of any other accident at this area, nothing to put my client on notice, no building code violations. Nothing whatsoever to establish that there is a hazard here.

These comments, however, were made during argument held outside of the presence of the jury. Thus, they may not be relied upon by Schleicher in support of her contention that "constructive notice" was an issue in the instant case.

Under common law negligence principles, a plaintiff may not recover for injuries sustained as a result of dangerous conditions that were "open and obvious." *See McCormick v. Waters*, 594 S.W.2d 385, 387 (Tenn. 1980); *Kendall Oil Co. v. Payne*, 293 S.W.2d 40, 42 (Tenn. App. 1955). In *Coln v. City of Savannah*, 966 S.W.2d 34 (Tenn. 1998), our supreme court considered whether and to what extent this traditional rule was affected by *McIntyre v. Balentine*, 833 S.W.2d 52 (Tenn. 1992), wherein the doctrine of comparative fault was expressly adopted in Tennessee. *See Coln*, 966 S.W.2d at 36. The court concluded that the traditional rule regarding "open and obvious" conditions was not subsumed by the doctrine of comparative fault, holding as follows:

> That a danger to the plaintiff was "open or obvious" does not, *ipso facto*, relieve a defendant of a duty of care. Instead, the duty issue must be analyzed with regard to foreseeability and gravity of harm, and the feasibility and availability of alternative conduct that would have prevented the harm. . . . if the foreseeability and gravity of harm posed from a defendant's conduct, even if "open and obvious," outweighed the burden on the defendant to engage in alternative conduct to avoid the harm, there is a duty to act with reasonable care. The circumstances of the case are then analyzed under comparative fault.

*Id*. at 43.

The essence of the rule announced in *Coln* is that the traditional "open and obvious" rule no longer serves as a complete bar to the plaintiff's recovery. It recognizes that, even if the danger is "open and obvious," the defendant may still owe a duty of care to the plaintiff under certain circumstances. Once it is established that the defendant owed a duty to the plaintiff, it is then appropriate to consider whether the plaintiff was also negligent. In the instant case, the trial judge instructed the jury that, if Schleicher did not use reasonable care to discover a dangerous condition existing at the Professional Building, she was negligent. The negligence of a plaintiff is an appropriate consideration under the doctrine of comparative fault. Thus, we do not think that the jury instruction given in the instant case is in any way inconsistent with the court's holding in *Coln*.

***Conclusion***

Because we can find no evidence in the record to support the jury's assessment of damages, we conclude that the trial judge erred in failing to grant Schleicher's motion for additur or new trial.  In all other respects, the judgment of the trial court is affirmed.  We therefore affirm in part, reverse in part, and remand the cause for a new trial solely on the issue of damages.  Costs on appeal are assessed one-half to Schleicher and one-half to Founders Security, for which execution may issue if necessary.

_____
FARMER, J.

_____
HIGHERS, J. (Concurs)

_____
TOMLIN, Sp. J. (Concurs)