IN THE COURT OF APPEALS OF TENNESSEE
AT KNOXVILLE
June 22, 2016 Session

## ERIC G. GLASGOW v. K-VA-T FOOD STORES, INC.

**Appeal from the Circuit Court for Blount County**
**No. L-18305      David Reed Duggan, Judge**

_____

**No. E2015-01653-COA-R3-CV-FILED-AUGUST 31, 2016**

_____

This is an appeal from a jury verdict in a premises liability action in which the plaintiff filed suit against the defendant, alleging that he sustained injury while using the restroom in a grocery store operated by the defendant.  The court denied the defendant's request for a directed verdict and submitted the case to the jury, which awarded $350,000 in compensatory damages.  Following the denial of post-trial motions, the court approved the verdict but reduced the award to conform to the amount of damages pled.  The defendant appeals, claiming the reduced award is not supported by material evidence. We affirm.

**Tenn. R. App. P. 3 Appeal as of Right; Judgment of the Circuit Court
Affirmed; Case Remanded**

JOHN W. MCCLARTY, J., delivered the opinion of the Court, in which CHARLES D. SUSANO, JR. and ARNOLD B. GOLDIN, JJ., joined.

J. Eric Harrison and Jeffrey M. Cranford, Morristown, Tennessee, for the appellant, K-VA-T Food Stores, Inc.

Bryan L. Capps and Charmaine M. Nichols, Knoxville, Tennessee, for the appellee, Eric G. Glasgow.

## OPINION

## I.      BACKGROUND

On February 27, 2012, Eric G. Glasgow ("Plaintiff") and his wife[1] entered a Food City grocery store located in Maryville, Tennessee.  Plaintiff proceeded to the restroom

_____
[1]Plaintiff is now divorced.

and used the toilet. After using the facility, Plaintiff attempted to stand but lost his balance, causing him to grab a handrail. The handrail pulled away from the wall, causing Plaintiff to fall and hit his head. Plaintiff and his wife completed an incident report before proceeding to Blount Memorial Hospital for treatment. In the days, months, and years following, Plaintiff experienced uncontrollable migraines accompanied by severe nausea or vomiting.

On February 27, 2013, Plaintiff filed suit against K-VA-T Food Stores, Inc. ("Defendant"), alleging negligence. The case proceeded to a jury trial, at which Plaintiff sought $250,000 in compensatory damages and $100,000 in punitive damages. The majority of the testimony presented at trial concerned Defendant's knowledge of and failure to fix the improperly secured handrail. Defendant does not contest the issue of fault on appeal. Accordingly, we will limit our recitation of the facts to the evidence concerning the extent of Plaintiff's injuries. The parties stipulated during trial that Plaintiff accumulated approximately $5,310 in medical expenses as a result of the accident and that he has a life expectancy of 38.36 years.

Plaintiff, who was 42 years old at the time of trial, testified that he is diabetic and had lost his big toe as a result of his medical condition. He alleged that the accident caused him to experience migraines and accompanying light sensitivity that affected his schooling and caused him to change his lifestyle and career path.

Plaintiff testified that he was a student at the University of Tennessee at the time of the accident. His tuition, books, fees, and supplies were paid for through the Veterans Administration's vocational rehabilitation program. He acknowledged that he had been placed on academic probation *prior* to the accident but asserted that he was unable to complete the remainder of the semester because of his injury. While he later returned to school and ultimately received a Bachelor's degree in science and communications, he was unable to pursue a career in his chosen field of employment. He explained that at the time of the accident, he had been employed in the field of television and video production for approximately 14 years. He claimed that he could no longer pursue employment in that field because of the bright lighting used in the industry. He recalled an incident in which he experienced the onset of a migraine in the studio, causing him to feel nauseated and vomit in front of his co-workers. He later pursued a career in the radio industry in an effort to avoid the onset of migraines. While he continues to experience migraines, he has been able to maintain employment with Cumulus Media, which owns three radio stations in the Knoxville area.

Plaintiff acknowledged that he is not actively seeking treatment from a physician for his migraines and that he currently uses over-the-counter medication to treat his condition. He asserted that the medication does not stop or prevent the onset of his

migraines.  He claimed that the migraines are debilitating, requiring him to "get out of the light" and stay in a dark, cool space until the pain subsides.  He stated that he also has difficulty driving on bright, sunny days or when snow accumulates, causing an intense brightness in the sunlight.

Daniel L. Cox, M.D. testified by deposition.  He provided that he received his medical license 27 years ago and that he currently specializes in family medicine.  He provided treatment to Plaintiff for "a couple of years" prior to the accident at issue.  He stated that Plaintiff had not reported a history of migraines, sensitivity to light, or significant head trauma or injury prior to the accident.  He recalled meeting with Plaintiff on March 1, 2012, a few days after the accident.  He noted that Plaintiff reported headaches, nausea, and malaise.  He characterized the physical exam as "unremarkable" but stated that Plaintiff likely suffered from a concussion.  The various tests performed did not reveal signs of head trauma, injury, or abnormalities.  Based upon his examination, he treated Plaintiff for "posttraumatic headaches which appeared to be progressing into vascular or migraine headaches."  He initially prescribed medication for general headaches and then sought medications tailored toward vascular headaches.  He recalled that Plaintiff later reported that the medication did not help and complained of "occasional dizziness and nausea or upset stomach."

Dr. Cox recalled that he ultimately referred Plaintiff to a neurologist, Steven Rider, M.D.  He reviewed Dr. Rider's report and found it consistent with his initial diagnosis.  He stated that he continued to treat Plaintiff for his various other ailments and recalled that Plaintiff routinely reported symptoms of vascular headaches.  He could not testify as to whether Plaintiff would continue to experience migraines in the future but confirmed that Plaintiff continued to report migraines throughout 2014.

Dr. Rider testified by deposition.  He provided that he received his license to practice medicine in 2005 and that he currently specializes in the field of neurology.  He first met with Plaintiff on May 21, 2012.  He stated that Plaintiff "had no obvious neurological deficits" but concluded that Plaintiff had "classic" symptoms of post-concussive migraine headaches.  He noted that Plaintiff had trouble sleeping, "as well as throbbing and pounding head pains that were typically unilateral, associated with nausea and photophobia."  He next saw Plaintiff on August 17, 2012.  Plaintiff reported that the medication was ineffective.  Dr. Rider stated that he prescribed a Medrol Dosepak, a course of steroids, which has been known to stop the cycle of chronic headaches.  He asserted that Plaintiff never returned for treatment after the August 2012 visit.

Dr. Rider testified that Plaintiff's migraines "may continue through his lifetime" and that Plaintiff would retain "the tendency or propensity to have migraines."  He agreed that there is not an objective test to determine whether someone actually experienced a

migraine headache. However, he asserted that Plaintiff never showed signs of exaggerating his symptoms or malingering with his condition.

At the close of all proof, Plaintiff withdrew his claim for punitive damages. The case was submitted to the jury, which returned a verdict against Defendant and awarded damages in the amount of $350,000. The trial court entered judgment in the amount of $250,000, the amount requested by Plaintiff. Defendant filed a motion for a new trial, or in the alternative, for remittitur. Following a hearing, the court denied the motion and approved the verdict and the award of damages as reduced. This timely appeal followed.

## II. ISSUES

We consolidate the issues raised by the parties into the following single and dispositive issue: Whether the amount of damages awarded by the jury as reduced by the trial court is supported by material evidence.

## III. STANDARD OF REVIEW

In reviewing a jury verdict, "[f]indings of fact by a jury in civil actions shall be set aside only if there is no material evidence to support the verdict." Tenn. R. App. P. 13(d). When this court reviews a judgment based on a jury verdict, we are limited to determining whether there is material evidence to support the verdict. *Forrester v. Stockstill*, 869 S.W.2d 328, 329 (Tenn. 1994).

## IV. DISCUSSION

Defendant argues that the award is excessive and beyond the range of reasonableness given the "minimal impact [Plaintiff's] injuries have had on [his] occupational and recreational life" and the fact that "he has no restrictions as a result of the injury." Defendant suggests that a reduced award of $100,000 would fairly compensate Plaintiff without destroying the integrity of the judgment. Plaintiff responds that the suggested remittitur is unsupported by the facts or legal authorities supplied by Defendant. He asserts that the award is supported by material evidence when he was forced to make significant lifestyle changes that affected his career path. He claims that the evidence also established "the existence of, and a permanent predisposition for, pain in the form of photophobia and migraine headaches which are unpredictable, uncontrollable, debilitating and accompanied by nausea and vomiting."

In personal injury cases, the amount of damages to be awarded is primarily for the jury to determine. *Brown v. Null*, 863 S.W.2d 425, 430 (Tenn. Ct. App. 1993). It is not within the appellate court's province to substitute its judgment for that of the jury. *Id.*

Furthermore, when the trial judge has approved a verdict, as in this case, our review is subject to the rule that if there is any material evidence to support the jury's award, it should not be disturbed. *E.g., Ellis v. White Freightliner Corp.*, 603 S.W.2d 125, 129 (Tenn. 1980). To determine if material evidence supports the jury's verdict, the appellate court shall: "(1) take the strongest legitimate view of all the evidence in favor of the verdict; (2) assume the truth of all evidence that supports the verdict; (3) allow all reasonable inferences to sustain the verdict; and (4) discard all [countervailing] evidence." *Barnes v. Goodyear Tire & Rubber Co.*, 48 S.W.3d 698, 704 (Tenn. 2000) (citing *Crabtree Masonry Co., Inc. v. C & R Constr., Inc.*, 575 S.W.2d 4, 5 (Tenn. 1978)).

Defendant cites a plethora of cases in support of its position but primarily relies upon *Holt v. Compton Sales Co.*, 900 S.W.2d 291, 292-93 (Tenn. Ct. App. 1995) and *Long v. Mattingly*, 797 S.W.2d 889, 896 (Tenn. Ct. App. 1990). In *Holt*, this court upheld the trial court's remittitur of damages from $250,000 to $200,000 even when the plaintiff was expected to experience long-term pain directly related to the accident. 900 S.W.3d at 292-93. In *Long*, this court held that an additional remittitur of damages was appropriate when there was no proof that the injury from the accident prevented the plaintiff from being employed and there was little proof that she would require additional medical treatment. 797 S.W.2d at 895-96.

The cases cited by Defendant are distinguishable by the simple fact that the trial court in this case approved the award as reduced to conform to the complaint, thereby limiting our review to a determination of whether there is any material evidence to support the award. The testimony presented established that Plaintiff changed his course of study and abandoned an approximate 14-year career in the field of television and video production as a result of the accident. While he has excelled in a new field of employment, he continues to suffer from debilitating migraines that require him to "get out of the light" and stay in a dark, cool space until the pain subsides. Under these circumstances, we conclude that there is material evidence supporting the award.

## V. CONCLUSION

The judgment of the trial court is affirmed, and the case is remanded for such further proceedings as may be necessary. Costs of the appeal are taxed to the appellant, K-VA-T Food Stores, Inc.

_____
JOHN W. McCLARTY, JUDGE

- 5 -